SABATINO, P.J.A.D., concurring.
I join in Judge Ostrer's erudite and well-reasoned analysis of the common law principles that govern this litigation. I write to add a few prospective comments.
Regardless of whether a jury imposes civil liability on this particular defendant, I respectfully urge the State to explore measures that might prevent the fatal tragedy in this case - or some other violent assault by a youth inflicted upon a resource parent - from being repeated.
For example, the State might adopt and enforce stringent regulations obligating private placement agencies to provide sufficient warning of the known dangerous characteristics of troubled youths to resource families, before such youths are taken into their homes. We are unaware that any regulations of that sort exist at the present time.
As a separate measure, the State might insist upon contractual provisions mandating placement agencies to carry out the important responsibility of notification detailed in this opinion. The contracts could specify, for instance, that such agencies face termination, perhaps with financial penalties, if they fail to perform that responsibility. Again, we are unsure from this record if typical State contracts already contain such language.
As it so happened, the State was not a participant in this appeal, as plaintiffs did not seek review of the dismissal of the State defendants from the case. We therefore lack the benefit of the State's briefing and perspective on these weighty issues. Nor have we been fully apprised of how the State's "no eject, no reject" policy bears upon the circumstances, and whether that policy imposes undue pressure on agencies to place troubled children rapidly with families.
*44 In any event, perhaps the spotlight of this tragic case will spur more effective ways to protect host families from harm. Ideally that can be done without diminishing the roster of qualified caregivers who are willing to open their homes to difficult needy children. We also are mindful that greater care in the placement process can reciprocally protect children from deficient foster caretakers.
It is not for us as judges, of course, to devise the appropriate policy solutions. Although the specter of civil liability can play an appropriate role in shaping future conduct, well-crafted regulations and vigilant contractual oversight may well offer more effective safeguards.
We therefore commend these policy issues to the efforts and expertise of the other branches of government, and to possible innovations of the private sector.
In the meantime, this litigation will continue in the trial court, as it must, under the applicable rules of law. But no matter who wins or loses before the jury, let us all hope that the life that was senselessly lost in this case will somehow result in more lives being spared in the future.